[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a motion to modify child support filed by the plaintiff. Based on the evidence adduced at the hearing, the court makes the following findings and order.
A judgment dissolving the parties' marriage entered on April 28, 1995. By the terms of the judgment and attendant separation agreement, primary residence of the parties' minor children, Elizabeth, now eleven years old, and Jillian, now nine years old, was awarded to the defendant father, subject to a detailed parenting plan which included alternate weekends and weekday access by the plaintiff mother. Contemplating the mother's relocation to Rhode Island, the parenting plan provided that the cost of transportation associated with the mother's access to the children should be borne exclusively by her. The parties agreed, and the court ordered, that the mother should pay child support in the amount of two hundred ninety ($290) dollars a week. In their agreement, the parties represented that this amount was in accordance with the Connecticut Child Support Guidelines. CT Page 13480
By motion dated August 11, 1998, the plaintiff mother seeks to reduce the amount of child support she is obligated to pay on the basis of a substantial change in the parties' financial circumstances. As an alternative, she claims that the present order substantially deviates from the Child Support Guidelines.
When the marriage was dissolved, the plaintiff was employed by the Northbrook Property Casualty Insurance Company, earning a gross annual salary of approximately seventy-six thousand, two hundred ($76,200) dollars, or one thousand, four hundred and sixty-six ($1,466) dollars a week. Her weekly net income, for purposes of application of the Child Support Guidelines, was one thousand and one ($1,001) dollars.[1]
At the same time, the defendant was employed by the Travelers Insurance Company earning an annual salary of approximately sixty-seven thousand ($67,000) dollars, or a weekly gross salary of one thousand, two hundred and eighty-eight ($1,288) dollars. His net weekly earnings, for purposes of application of the Child Support Guidelines, was nine hundred and fifty-nine ($959) dollars.[2]
Since the date of the marital dissolution, the plaintiff has relocated to the State of Rhode Island, and she has changed employment. While her move to Rhode Island was contemplated at the time of the marital dissolution, she asserts that the court should consider the cost to her of visiting with the children in assessing her request for a reduction in child support. In order to see the children on alternate weekends and on week day evenings, the plaintiff makes approximately sixteen one-way trips a month between Connecticut and Rhode Island, each trip approximately one hundred miles. While the court is mindful that access to the children is for their benefit as well as the plaintiff's and the costs of transportation may be considered by the court in determining its child support orders, in this case, where the move to Rhode Island by the plaintiff was specifically discussed in the parties' Separation resultant cost of traveling between Connecticut and Rhode Island does not represent a change in circumstances. It is an insufficient basis to modify the present child support order.
As additional support for her motion, the plaintiff claims that she is earning substantially less now than when the marriage was dissolved. The plaintiff is employed by the Preston Agency in CT Page 13481 Warwick, Rhode Island. Her present financial affidavit reflects gross weekly earnings of one thousand ($1,000) dollars, and net earnings from employment of six hundred and eighty-eight ($688) dollars.
The plaintiff's affidavit is incomplete for purposes of calculating her child support obligation. In addition to her stated salary, the plaintiff owns a 1998 Volkswagen automobile for which the Preston Agency makes monthly loan payments of five hundred and thirty-three ($533) dollars to a credit union on the plaintiff's behalf. Additionally, the Agency pays the insurance premium on this automobile of approximately one thousand, four hundred and four ($1404) dollars a year. On a weekly basis, these payments total one hundred and fifty ($150) dollars. These expense payments are "perks" received by the plaintiff and, as such, are included in the determination of her weekly income. Gross income is defined in the Child Support Guidelines as including, "commissions, bonuses, tips and perquisites." C.G.S.46b-215a-1(11) (ii). In this case, since no amount of this benefit is reported to the Internal Revenue Service as income, it is untaxed. Thus, the benefit is part of the plaintiff's net income.[3] Similarly, the Agency's payment of a life insurance premium for the benefit of the plaintiff at a cost of twenty-nine ($29) dollars a week is a perquisite provided to the plaintiff and included as part of her income for purposes of calculating her support obligation.[4]
The defendant claims that the court should also consider the contribution the plaintiff's employer makes to a qualified retirement program on her behalf. On an annual basis, the Agency pays six thousand ($6,000) dollars to a SEP on behalf of the plaintiff. The court does not include this payment as part of the plaintiff's income because she has no present legal entitlement to its receipt and it is not presently available to her. Pension and retirement payments are part of one's income once they are in pay status. To include them as income at the time of contribution during an employee's work life and then again when they are in pay status during the employee's retirement would be to count them twice. Since pensions, annuities, and other retirement benefits are counted as income when they are received, it would be inequitable to also consider them as income at the time of the employer's contribution and when the employee has no present legal right to their receipt.[5]
CT Page 13482
The addition of the car loan and insurance payments to the plaintiff's stated net weekly income from employment bring it to eight hundred and sixty-seven ($867) dollars, not counting the contributions to her living expenses made by her domestic partner.
In addition to the perquisites the plaintiff receives, she receives a regular contribution of fifty-eight ($58) dollars a week toward household expenses from her domestic partner.[6]
In Unkelbach v. John, 244 Conn. 350 (1998), the Supreme Court determined that it is proper for a trial court to include a domestic partner's regular contributions toward household expenses in a party's income for purposes of calculating a child support obligation. Thus, the sum of fifty-eight ($58) dollars is properly shown on the plaintiff's affidavit as a supplement to her weekly income. The defendant's claim that the court should also include the absence of any direct housing expense on the plaintiff's affidavit as supplemental income to her is unavailing in the absence of proof that the plaintiff's domestic partner contributes sums greater than the amount stated on the plaintiff's affidavit toward her expenses.
The addition of this contribution to the plaintiff's income brings her total weekly net income, for purposes of calculating her child support obligation, to nine hundred and twenty-five ($925) dollars.
Finally, with respect to the amount of the plaintiff's income, there was evidence that she received a bonus of one thousand, seven hundred ($1,700) dollars earlier in the year. On an annualized basis, this represents an additional thirty-two ($32) dollars a week in gross income, and a net of approximately twenty-two ($22) dollars, assuming that the plaintiff is in a thirty (30%) percent tax bracket.
In light of her annual salary, bonus, perquisites, and domestic partner contributions, the court finds the plaintiff's weekly net income is approximately nine hundred forty-seven ($947) dollars.
Contrary to the defendant's claims, the court finds that it would be inappropriate to base its present order on the plaintiff's earning capacity as evidenced by her prior earnings rather than on her actual present earnings. The court is satisfied from the evidence that the plaintiff's decision to CT Page 13483 leave her former employer, while voluntary, was based on sound business judgment. Additionally, as noted, the plaintiff has not, in fact, reduced her financial circumstances as a result of her personal and employment relocation.
As another prong of her quest, the plaintiff claims that the defendant's income has risen substantially since the date of the marriage. The court agrees. While the defendant remains employed by the Travelers, his gross annual salary has increased to approximately seventy-six thousand, five hundred ($76,500) dollars. In addition, the defendant received a bonus of nine thousand ($9,000) dollars earlier in 1998, bringing this years total compensation to approximately eighty-five thousand, five hundred ($85,500) dollars. Accepting the defendant's representation of the amount of his mandatory deductions and assuming that he is in the thirty-five percent (35%) bracket for income tax purposes, his net weekly income, including his bonus, is one thousand, twelve hundred and forty-nine ($1,249) dollars.[7]
Based on the Child Support Guidelines, the two children are entitled to no less than four hundred and eighty ($480) dollars a week in support from their parents. The plaintiff's obligation represents forty-three (43%) percent of the total. Her weekly minimum obligation, therefore, is two hundred and six ($206) dollars. Since the parties' combined net income exceeds the maximum income upon which the Child Support Guidelines are calculated, there is no presumptive application of the Child Support Guidelines. The amount ordered, however, should be no less than the payer's fair percentage of the amount stated for parents whose combined net incomes are seventeen hundred and fifty ($1,750) dollars. Cf. C.G.S. 46b-215a-2(a).
While the circumstances of the plaintiff's current employment and earnings do not constitute a substantial change in her financial circumstances since the marital dissolution, the increase in the defendant's earnings does represent a substantial change in financial circumstances entitling the plaintiff to a review of the court's child support order.
The increase in the defendant's disposable income since the marital dissolution is partially offset by the increase in his expenses and the decrease in the plaintiff's living expenses. At the time of the marital dissolution, the plaintiff represented that her weekly expenses, excluding child support and including CT Page 13484 payment on recurrent liabilities, totaled seven hundred and thirty-five ($735) dollars. Of this amount, housing expenses including rent or mortgage, electricity, telephone and cable t.v. amounted to two hundred and ten ($210) dollars. Presently, the plaintiff claims weekly expenses, excluding payment of child support and including payment on recurrent liabilities, totaling four hundred and sixteen ($416) dollars. Her housing expenses, which include fuel, electricity, telephone, and cable t.v., total sixty-six ($66) dollars.[8] Thus, her housing expenses alone have decreased by one hundred and thirty-four ($134) dollars a week.
The court heard no evidence that the needs and entitlements of the children have changed since their parents' marital dissolution. While the defendant has enjoyed an increase in his earnings, the plaintiff's reduction in employment-related income has been offset by perquisites from employment and a reduction in her living expenses. The substantial increase in the defendant's income does, however, entitle the plaintiff to some reduction in her child support obligation. Accordingly, the motion to modify is granted. As child support, the plaintiff is ordered to pay to the defendant, the sum of two hundred and fifty ($250) dollars a week. In all other respects the terms of the judgment remain in full force and effect.
Both parties have sufficient means to pay their own counsel fees. No counsel fees are awarded to either party.
In making these orders, the court has carefully considered the evidence and applicable statutory and decisional law.
Bishop, J.